## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH MICHAEL GUARASCIO**,

Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION**, *et al.*,

Defendants.

Case No. 18-cv-2791 (CRC)

## OPINION

With a supplemental declaration filling the gaps of the Defendants' original motion for summary judgment, and receiving no response from Plaintiff, the Court will grant the motion as to the outstanding claims and dismiss this case.

Federal inmate Joseph Michael Guarascio filed this *pro se* action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. His suit challenges the Federal Bureau of Investigation's ("FBI's" or "the Bureau's") responses to his 2016 and 2018 requests for files related to his conviction for manufacturing child pornography. The FBI initially refused to process Guarascio's requests because of a FOIA waiver contained in his 2009 plea agreement but, after Guarascio filed suit, the Bureau relented, searched its files, and produced a steady stream of responsive records over the course of a year. Once it completed production, the FBI moved for summary judgment.

In a November 2023 opinion, the Court granted the Bureau's motion, save for two limited exceptions. See Guarascio v. Fed. Bureau of Investigation, No. 18-CV-2791 (CRC), 2023 WL 7182057 (D.D.C. Nov. 1, 2023). First, the Court could not determine that the Bureau's search was adequate because its declarants had failed to aver "that all files likely to contain responsive

materials . . . were searched." Id. at *5 (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003). Second, the Court found the Bureau had not carried its burden of proving that "all materials withheld under [FOIA] Exemption 7(D) are truly confidential and thereby shielded from disclosure." Id. at *8; see id. at *10–11. The Court, accordingly, withheld final judgment on these matters and directed the Bureau to file a supplemental declaration. Id. at *12.

The Bureau answered that call in January 2024 by submitting an additional declaration prepared by Michael Seidel, the Chief of the FBI's Record/Information Dissemination Section. See Notice of Supp. Response, Ex. A ("Seidel Decl.") ¶ 1. In this declaration, Mr. Seidel details the FBI's search for responsive records and its rationale for withholding certain documents under Exemption 7(D). The Bureau also filed a certificate of service, showing it had mailed these materials to Guarascio. See Certificate of Service (ECF No. 59). But, for whatever reason, Guarascio failed to file a response to this declaration or the Bureau's accompanying request for an entry of judgment in its favor within the window that the Court had allotted. See Jan. 12, 2024 Min. Order (directing Guarascio to "file any response by February 19, 2024"). Granting him one last chance to plead his case, in late February, the Court "ordered [Guarascio] to file any response by March 14, 2024" and advised him that "[f]ailure to do so may result in the Court treating the remaining issues as conceded under the Court's Local Civil Rule 7(b) and granting summary judgment in favor of" the FBI. See Feb. 29, 2024 Min. Order. And still, Guarascio remained silent.

As the Court warned, though, "[w]here a party opposing a motion fails to timely serve and file an opposition memorandum pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the court has the power to 'treat the motion conceded' pursuant to Local Rule 7(b)."

Inst. For Pol'y Stud. v. U.S.C.I.A., 246 F.R.D. 380, 385 (D.D.C. 2007) (quoting Fed. Deposit

Ins. Corp. v. Bender, 127 F.3d 58, 67–68 (D.C. Cir. 1997)).  Here, while the FBI's submission is

styled as a supplemental response, it is effectively a renewed motion for summary judgment.  As

such, and as the Court cautioned, Guarascio was required to respond or risk conceding all of the

arguments therein.  Hearing no response from Guarascio despite the Court's order warning him

of the consequences of staying mum, the Court will now treat the issues on which it previously

reserved judgment as conceded.  Yet, for the sake of completeness, the Court will delve into Mr.

Seidel's declaration and explain why the Bureau is entitled to summary judgment regardless.

Regarding the adequacy of the search, the Court withheld judgment the last go around

because the Bureau had not provided "the requisite averment that all locations likely to contain

responsive records were searched."  Guarascio, 2023 WL 7182057, at *6 (citation omitted).

"Should the FBI cure this deficiency with a new affidavit," the Court presaged, "the burden

[would] shift to Guarascio to rebut that affidavit with countervailing evidence—i.e., more than

'mere speculation' as to yet uncovered documents."  Id. (quoting Wilbur v. CIA, 355 F.3d 675,

678 (D.C. Cir. 2004)).  The Bureau did its part with Mr. Seidel's supplemental declaration

explaining that the FBI searched for records within its Central Records System's ("CRS's")

Automated Case Support and Sentinel indices—which "provide access to a comprehensive,

agency-wide set of indexed data on a wide variety of investigative and administrative

subjects"—using Guarascio's first and last name as the search term.  Seidel Decl. ¶¶ 6–7.  This

search located Guarascio's "main" file as well as responsive "reference" files.  Guarascio, 2023

WL 7182057, at *6.  "Additionally," Mr. Seidel attests, "there was no indication from the FBI's

CRS search efforts that responsive records would reside in any other FBI system or location."

Seidel Decl. ¶ 7.  His declaration then concludes with what was left unsaid the last time:  The

3

FBI has "searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA." Id.  That official declaration, which is "accorded a presumption of good faith," is enough to carry the FBI's burden. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  On the opposite side of the ledger, Guarascio failed to rebut this declaration with countervailing evidence that the Bureau's search was in some way deficient.[1]  The Court thus finds the Bureau satisfied its FOIA duty of performing a reasonable search.

On the withholdings under Exemption 7(D), the Court reserved judgment the last outing because it could not discern whether all the withheld records that the Bureau had received from the North Carolina State Bureau of Investigation ("NCSBI") were truly confidential because, in the FBI's own telling, only some pages bore the marking:  "CONFIDENTIAL:  This is an official file of the North Carolina State Bureau of Investigation.  To make public or reveal the contents to an unauthorized person is a violation of the General Statutes of North Carolina." Guarascio, 2023 WL 7182057, at *10.  It was therefore uncertain whether all of the withheld files were provided under a condition of confidentiality, as Exemption 7(D) requires. See id. Mr. Seidel's supplemental declaration resolves those lingering doubts.  As Mr. Seidel explains,

---

[1]  In his prior briefing, Guarascio objected that the search did not uncover FD-302 forms related to his purported conversations with FBI officials. See Opp'n at 11.  However, he never established that the Bureau prepared FD-302 forms for these encounters or that any such forms, if they were prepared, are still within the Bureau's possession.  And, by failing to respond to the supplemental affidavit, he has provided the Court no reason to second guess the Bureau's sworn declaration that it has searched all locations reasonably likely to contain responsive records. That is fatal to his claim because, even if these FD-302 forms exist somewhere, the adequacy of a search is measured by "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." SafeCard Servs., 926 F.2d at 1201.

following the prior opinion, the FBI re-reviewed these withholdings and "determined that there were clear indicators that the NCSBI requested that its entire file pertaining to its investigation of Plaintiff be kept confidential."  Seidel Decl. ¶ 8.  Specifically, it found that the cover sheet of the NCSBI case file was stamped with the confidential warning quoted above and that, "[t]hroughout the NCSBI's file, the FBI located the same confidentiality marking mentioned above on the first page of each of the NCSBI's reports."  Id. ¶ 9.  Even though this confidentiality marking did not appear on every ensuing page, then, it was still "clear to the FBI from the text of the reports that all the pages following the confidentiality statement within a report, as well as the documents attached to and directly following a report[,] were grouped together under the same request for confidentiality."  Id.  The information contained in the reports further supported this conclusion, as it revealed "the NCSBI's law enforcement techniques and procedures."  Id. ¶ 10.  Still, the FBI did not apply a wholesale withholding approach to all the documents within the file.  It instead "conducted a page-by-page segregability analysis of the NCSBI's file and determined that some information"—including the "search warrants, evidence listings, seized property lists, probable cause affidavits, and arrest warrants"—"could be segregated for release."  Id. ¶¶ 8, 11.  From this undisputed declaration, which again carries a presumption of good faith, the Court finds that all Exemption 7(D) withholdings are justified, and that the FBI adequately segregated and released all nonconfidential materials.

       For the forgoing reasons, the Court will grant the FBI's motion for summary judgment on the remaining issues.  A separate Order will follow.

                                                      _____
                                                      CHRISTOPHER R. COOPER
                                                      United States District Judge

Date: May 16, 2024